Please rise. This court is now in session. You may be seated. Is everybody freezing in here? Is it cold? It's wonderful. Go ahead. 3-11-0681 Roy R. Buehler, appellant by Stanley Tucker v. Michael A. Buehler and the lead by Phyllis Kerkhoff. Mr. Becker? Thank you. Counsel, Mr. Court Attorneys, I think to start out with, I'm going to, just in a moment or two, do kind of a little decision tree of how the logic of this goes down. And in thinking about it, I go first to was there a, what actually I think correctly referred to as a confidential relationship that has been referred to by all, including the court, as a fiduciary relationship. Was there such a relationship? If not, defendant wins. If yes, then the analysis must proceed. And then the second part of the decision tree is, if we're proceeding with the analysis, then is the evidence sufficient, even if all the Dead Man's Act evidence comes in? If yes, then plaintiffs win. Plaintiff wins. If no, then we proceed. And at that point, we have the dreadful task of analyzing the DMA, Dead Man's Act evidence. But as far as the second part of the analysis, I want to point out, if the court ultimately concludes that the fiduciary relationship is here, then the case is over. Because as I read the record and see the case, in the first appeal in this case, this court held that, among other things, in reversing the directed verdict, that one of the requirements in this case, if there was a fiduciary relationship, was the full and frank disclosure requirements that the court alluded to in its first opinion. And there is absolutely nothing in the record to solve that problem for the defendant. To go then to the matter of the fiduciary relationship, in the first opinion in this case, on the first appeal, in dealing with the facts that were in the record, with respect to the presumed fiduciary relationship, the court held, of course, that the plaintiff had presented a prima facie case. And so then the case went back for the defendant to put on his evidence. And as I read the record, with respect to the issue of the fiduciary relationship, the sole bit of new evidence that is in the case is the matter of interrogatory number seven, which the trial court specifically dealt with. Now, the trial, I believe the second part of the trial was in 06. This interrogatory was answered by the deceived. And you will recall that her son Roy has been substituted in the case for her after her death because of his interest in her estate in Wisconsin. But in any event, their mother, the plaintiff and defendant's mother, answered this interrogatory on October the 11th, 2002, prior to her death. And the trial court hung the whole case in finding there was no fiduciary relationship involved on this interrogatory. And the question was this, in 2002. State your full name and last name and address of each person or persons who acted in a fiduciary capacity for you, the dates and places of such acts, and the circumstances in which they did so act. And the then plaintiff answered none. And so her answer was, no persons have acted in a fiduciary capacity for me. She continued, defendant has purported to act in a fiduciary capacity for me. However, I did not authorize any of these acts. And so the trial court took this answer and said, oh, she says there's no fiduciary capacity case over. Well, let's think about what that question asks and what you, as an attorney or a layman, might think the question was. Who are the persons who have acted in a fiduciary capacity for you? Well, I think, naturally, we would think of, well, let's see, did she have any powers of attorney? They are fiduciaries. Did she have any trustee? They are fiduciaries. Was there a bank trustee in some manner? Did she have a guardian? Those are the things we would think of in that context. And, of course, she answered none. But the real question, what we're doing here is asking a question that calls for a legal conclusion in an interrogatory, which, of course, has some problems with propriety. But anyway, the real question is, did Michael engage in any conduct which caused you to repose trust and confidence in him such that a transaction with him should be suspect under the rule about such relationship? A good reading on that subject that we cited in our brief is IPI 200.03, the comment. It explains the situation. And in the first opinion, the court went through this situation. Well, that's not an admission. It's simply not an admission that Michael didn't engage in this confidential relationship. You know, the law is that any relationship, a family relationship, a social relationship, and what have you, can elevate this relationship to a fiduciary situation where the person enjoying that relationship really can't transact business without the full and frank disclosure alluded to in the earlier opinion. And so that's the sole basis in the face of all of this conduct that's in the record that the one son, Michael, who's the defendant, engaged in all these relationships with his mother that obviously created this relationship of trust and confidence. I believe he even did her income tax return. He signed her income tax return. He wrote some checks. He advised her on what bank to go to and getting a high interest rate. And he was present, as we show in the evidence, at virtually every transaction that she can. So under the law, the law presumes, and this is from the opinion in this case, that is the law of this case, the law presumes any benefit obtained by a fiduciary relationship results from fraud. And evidence of breach need not be introduced where the strong presumption arises. The law employs jealous vigilance to scrutinize this kind of transaction and will not permit such gratuitous generosity to prevail. And so that's not my words. That's this court's words in the original part. To rebut this presumption said this court, defendant would have to establish he made a frank disclosure to his mother prior to the transaction, that he paid fair value, and that she received confident independent advice. Well, none of those things are in the record. That has to be acknowledged. And so interrogatory number seven establishes absolutely nothing in favor of the defendant. It is ambiguous. It is unclear. It is a legal conclusion. It has nothing to do with how the fiduciary relationship came about in this case. There's no claim that he abused the power of attorney. There's no claim that he abused the guardianship or trusteeship. And I'm not sure the trial court actually understood that. The fundamental law that is discussed and the best place I find it to be discussed, and I cite this in my brief, is the IPI 200.03. Where you're going for the presumption of fiduciary relationship in this kind of situation, you show it doesn't make any difference who it is, a relative, a friend, a social relationship. If you show that the defendant is the dominant party, that there's trust and confidence by the, in this case, his mother, that there's superiority, that there's influence, then you've got that relationship that taints any dealings between them. And there it is fundamental law that the relationship may arise from a natural setting, a social setting, a domestic setting, or a personal setting. Now, that's, okay, that's the state of the law, IPI. But what did the trial judge actually say? He said, this is a closed case. And then he goes to the interrogatory, right? Well, are you saying that it's a 50-50 until the interrogatory comes in? Not at all. This very court, I'm sorry, this very court ruled that we had established a prime official case and had established adequate facts for this relationship to survive a directed verdict, okay? So then what happens is, we go back in here, defendant's evidence. And what I'm saying is, the only evidence the defendant put in on this subject is interrogatory number seven. That's the only evidence. And the court and defendant argue, well, she says there's no fiduciary relationship. Well, that's not really what she said. She said that no one had acted for her in a fiduciary capacity. And what I'm saying is, that when you ask that question, how would you answer it? Would you think, oh yeah, we've got to talk about that presumed relationship. Well, that's asking about, did the guy have the power of attorney? Did the guy have a legal fiduciary, well, everything's legal, but if you know what I mean, did he have a fiduciary status that arose out of some instrument or what have you? And that's what we would think of. That interrogatory, we do not think, rebuts the nature of this case. I think the trial judge would say, well, he wasn't insane, but I think he was thinking, well, he wasn't a power of attorney, he wasn't a guardian, he wasn't a trustee. This doesn't apply. But that's not the point. When you solicit the trust and confidence of an 80-year-old person who is retired and who has a relationship with you and you do things for them, you ultimately become a person who really can't deal with them. But you still had the burden in the second trial to prove a fiduciary relationship existed. Do you agree with that? Well, sure, we'd already done it. We've done it in the first... No, that isn't what this court said in the first case. We do not reach the issue of whether the facts prove a fiduciary relationship existed. Well, it's my understanding of the first opinion that on the fiduciary relationship, the court found that we had established a prima facie case. I think what... No breach of fiduciary duty. Well, I respectfully disagree, Your Honor. Well, I'm just using the language. I was not on this panel of the court, but I'm just using the panel of this court's language. Well, when you go through the opinion, you know, in the directed verdict situation, in order to reverse it, you have to find a prima facie case on each element of the cause of action. You have to find that there are adequate facts, and the court has some latitude there. Since it's not a jury case, it isn't necessarily stuck with those facts. So you have to find that there are adequate facts on each element of the case, and that's what this court did. Otherwise, there would be... The only basis upon which this court could reverse is to find a prima facie case on each one of those elements, and that's what happened here. And the only thing that changed in the defendant's case, when it was presented, after the reversal, was interrogatory letter 7. And that simply isn't enough. Mr. Tucker, I have a couple of questions, if you will. First of all, the defendant did introduce at least two other witnesses, the realtor and the banker. That's correct. And each one of them, in our view, confirmed the fiduciary relationship. What did they show? They showed that he was with her when she went to the bank. That's part of the fiduciary relationship in the presumptive situation, involvement in the transaction. Same is true of the Kramer Real Estate Conference. That's the reason for presenting... reason, we say, why that confirms the fiduciary relationship. It really didn't show anything. My second question is then, how does our standard of review affect your argument? I'm sorry, I didn't... How does our standard of review affect your argument? I don't think it does, because what we're saying is there's no new evidence in the case to change any of the facts. And the court has already found that the facts, if unrebutted, are sufficient. And they stand in the record unrebutted. And so, for the 30 seconds or so, I have... When you take out... When you take out the Dead Men's Act violations, there's nothing left here. The case should be reversed. And, for example, the court ruled that we waived the Dead Men's Act in connection with the drive from Milwaukee, Wisconsin, for 500 miles, to Warsaw, for 300 on a long way. We proved in that situation that they talked about checks, they talked about what banks to use, they talked about interest rates, to show the presumptive facts of the fiduciary relation that we were working with. The court ruled that he could testify, well, in that trip, Mother said, if I deposit 25,000, I can give you 60,000 to pay off your mortgage. Well, come on. This is a waiver? We didn't talk about that, first of all. Is there any subject matter kind of requirement? Of course there is. We didn't talk about that. Let me ask you to think about this now. When we present three subject matters of conversations with the decedent that occurred in a six- or seven-hour trip, when does that open the door to? Your time is up, Counselor. The whole six hours? Thank you very much. We ask you to rule that the relief requested in our brief. Thank you. Thank you, Mr. Tucker.  Good afternoon, Your Honors Counsel. May it please the Court, several times during Counsel's argument, there's been a suggestion that there is a presumption of a fiduciary relationship. I don't think that any case law, the prior law issued in this case, in terms of the prior decision, nor any other case talks about the presumption of a fiduciary relationship. There are, of course, formal fiduciary relationships, such as Counsel was referring to, and then there is a fiduciary relationship that's less formal, but that arises from the relationship of the parties. But that relationship is not in any way presumed. It's broad that it's presumed if a fiduciary profits from his or her position. We respectfully submit to the Court that the idea that there was no new evidence in this case besides interrogatory number seven is just false. There were two neutral witnesses, the realtor and the banker, and there was also the testimony from the defendant that was attacked under the Dead Man's Act, and time allowing we would wish to address that matter. But with reference to interrogatory number seven, there's considerable indication from Counsel's presentation that the appellant continues to maintain that interrogatory number seven was a judicial admission rather than an evidentiary admission. And we've argued in our briefs, and we again argue today that clearly this was no more than an evidentiary admission. Defendant's Counsel asked for interrogatory number seven to be introduced into evidence. He did not request that it alone be treated as a judicial admission such that it would win the case. The trial court did not treat it as a judicial admission. The trial court treated it as an evidentiary admission. The trial court's judgment letter recites all of the evidence that was introduced and interrogatory number seven among that evidence, and the trial court's letter of decision clearly states based on all the evidence. So insofar as appellant is suggesting that interrogatory number seven was the sole evidence relied upon by the trial court, that's just not the case. It is a fact that the trial court clearly stated that it found interrogatory number seven to be compelling evidence, and we submit to the court that it is compelling evidence. Significantly... Well, first of all, because it was not a judicial admission, it is not a conclusion of law. Clearly the word fiduciary is a word that's used in the law, but this interrogatory did not ask, did a fiduciary relationship exist, or was someone your fiduciary? It asked, did anyone act as your fiduciary? This really is a question of fact, just because the term fiduciary is used in the law does not mean that addressing a question about acting as a fiduciary is in and of itself seeking some sort of a conclusion of law. And in any event, the trial court did not treat this as a conclusion of law. It did not treat it as a judicial admission. With reference to the Dead Man's Act testimony, or that testimony that was challenged under the Dead Man's Act, it appears that appellant wishes this court to make a distinction between conduct that occurs in a period of time and conversation that occurs in a period of time. And we submit to the court that that is an artificial and a narrow construction of the Dead Man's Act, and a construction that clearly is not in accord with the precedents. We cited in our brief a 1st and 4th District case, and we also cited an Illinois Supreme Court case from 1948 that was decided under the prior statute. All of these cases talk either about transaction in the older case, which was the test under the former Dead Man's Act, or event in the more modern cases, and do indicate that the same transaction or the same event includes conversations that occurred in the course of that transaction or event. In addition to those holdings, however, we have the more recent Illinois Supreme Court holding in Home v. Zia. And in that case, the court took what I would describe as a common-sense approach to interpreting the Dead Man's Act. And what the Supreme Court said was that if an opponent's evidence raises... Excuse me. If the opponent's evidence purports to convey or describe a certain state of facts or a hypothesis, then the opposing party is allowed to rebut that. This is exactly what happened in the cases bar. You can look at page 2 of the reply brief of the appellant in this case. And in the reply brief, talking about the occurrences of Cramer Real Estate, the appellant admits that the evidence regarding Cramer Real Estate was introduced by the plaintiff as a part of the proof of the fiduciary and confidential relationship. This is in accord with appellant's argument today that the mere presence of the defendant at a transaction that his mother was conducting, that that mere presence imports a fiduciary relationship, disregarding the fact that there's no case law that indicates that a person's mere presence at another person's transaction makes them a fiduciary. I mean, even if it were not apparent that that is not the rule of law, it should be obvious that the defendant had the right to rebut that he was doing something more than merely being present, doing something more than happening to be there because he had served as the chauffeur for his mother at that particular time. Clearly, under Holm v. Zia, the plaintiff's proof sought to show that the defendant's presence with his mother at a transaction was indicative of his fiduciary relationship with her. The defendant certainly, pursuant to Holm v. Zia, was allowed to describe that event, including any conversation that occurred during that event, in order to show that he was nothing more than an observer. The same logic applies to the other dead man's problem issue in this case, and that has to do with the conversation on the ride from Milwaukee to central Illinois. The appellant plaintiff wishes to characterize the conversation regarding the disposition of the proceeds partially in gift or partially in a CD as being a different discussion from just the CD. According to the plaintiff, these are two separate conversations. There is, however, absolutely nothing in the proof that would indicate that these are separate conversations. Certainly, the defendant in his testimony said that the earlier part of the conversation was his mother making the gift, and the second part of the conversation was the defendant suggesting that she put her money in a CD rather than a regular savings account. However, there isn't any indication that there was a separation of time or place in this conversation. Maybe I misunderstood the time sequence. Wasn't the conversation, what should you do with your money? I mean, is that the topic on the drive down? Well, what the defendant testified to in his challenged evidence was that they were riding along, that his mother opened her purse, she took the proceeds check from the sale of her Milwaukee home out of her purse, and initiated a conversation about what the defendant's balance was on his mortgage. So according to the defendant's testimony, that happened first. Mother said, I'm going to give you enough to pay off your mortgage and put the remainder in a savings account, to which the defendant said, no, put it in a CD. You'll probably get a better interest rate. So I mean, there just isn't any indication from anything in the record that this conversation, that there were two separate conversations. The defendant's testimony would indicate they were a single conversation. But even if there was some lag time in this conversation, it is our position that nevertheless it is a single event or a single conversation, and that it is sufficiently limited in time and place. There is argument in the briefs that originates from the citation of cases by the defendant. Thank you. And some of these cases, the Brown case from the Supreme Court, the First District case, Zorn, and the Fourth District case, Westlake versus Steve Rimey, the districts mixed up. But in any event, those three cases all adapted to extremely broad interpretations of what a transaction or an event was. And the plaintiff's reply brief criticizes those cases, but we're not looking at that kind of a time span. We're not looking at incidents far removed from the ultimate incident. Here we are talking about one incident at Kramer's and a second incident, the ride home from Milwaukee to central Illinois. Certainly these are sufficiently narrow and discreet situations to fit within the same event or conversation that the dead man's gap talks about. And furthermore, then, it is our position that an event includes a conversation. So for all of these reasons, it's our position that the defendant's testimony on the renewed trial in this case did not violate the dead man's gap in any way, and that the answer to interrogatory number seven was appropriately accepted as an evidentiary admission with reference to the nature of the proof and our position about why we overcame any of the plaintiff's proof regarding a fiduciary relationship because the time constraints will rely upon the arguments in our brief. But we do ask... What is the standard of review on that issue, on the first issue? On the first issue, on the dead man's act? Yeah. Well, insofar as I... Well, on the whole fiduciary relationship. Not the dead man's act. I'm sorry. It's all mixed together, obviously. But on the issue of finding a fiduciary relationship, it's a manifest way... That's a manifest way question in our view because the plaintiff's proof had been put on in the original trial of the case. We put on our proof, and we were... There's quite a bit of discussion, I think, to be had on what the nature of the finding was in the prior decision. But we do accept and understand that the decision said that a prima facie case had been made on a fiduciary relationship. Really? You're saying that's the law of the case? Well, that a prima facie case had been made and that the burden shifted to us. I would understand the case to have said that. No, the language says of a breach. Of a breach of a fiduciary relationship. But, I mean, they're also saying that a prima facie case existed. I'm trying to read this language. We do not reach the issue whether the facts prove a fiduciary relationship existed. Does that mean you? Well, I think it means that... We decide only that the plaintiff can proceed. I think a prima facie case is different than proving that a fiduciary relationship existed. I certainly think that the court left a very low bar in terms of the proof that it held the plaintiff to. But I think that when the case went back on the renewed trial proceedings that the defense took it upon itself to bear the burden of showing what the relationship was and did carry its burden in that regard to negate any concept that a fiduciary relationship had been formed in this case with reference to the transaction at issue. Why, I guess I view it slightly differently and you're being so polite to me because I broke the last order. Didn't you, it seems to me your evidence in the form of the banker showed that this particular transaction there may have been a fiduciary relationship but there was no overreaching. The banker was there and said mother directed the banker to issue these two separate checks. One to Michael and Michael didn't participate in it. So to me, even though the fiduciary relationship may have existed your evidence shows kind of an arm's length transaction on the day in question, based on what the banker said. Well, I think that there were some problems when we talk about a fiduciary relationship that's not a formal fiduciary relationship. So if we don't have a power of attorney or a trusteeship or something else that is a formal fiduciary relationship I think it is possible that we have a fiduciary relationship in some context but not necessarily in another. And reading back on various precedents I think that that seems to be supported by the case law. We have that Eiberger's escape for instance. See, in my mind what the evidence did upon remand is rebut that presumption of fraud through the banker's testimony. To show that it was an arm's length transaction. I don't think it goes to whether a fiduciary and you can argue with me whether a fiduciary relationship existed between these two people. What you had to rebut is the presumption of fraud by the gift. Everybody agrees it was a gift. Well, everyone knows that she gave him the money and whether or not the donative intent was there or whether or not there was undue influence on her at that particular time. Again, I think and I just had reread Eiberger's estate and I think in Eiberger's estate when you read it it's very hard to definitively conclude that the court either found that there was no fiduciary relationship on the one hand or on the other hand that the court found that any allegation of undue influence, that any concept of undue influence was refuted. So there probably are a couple of different ways of looking at this. The fact of the matter is that the trial court found that there was no fiduciary relationship. I understand your point now. Yeah, I mean that's the way the trial court analyzed this. I mean would the trial, based with this questioning, would the trial court have said, I found that there was no undue influence and therefore it was a valid gift? Well, perhaps. I'm with you now, thank you. Thank you. Thank you, Your Honor. Mr. Tucker, unmanned after the defense put on their case, was there any rebuttal evidence that you offered? Rebuttal of what? That they put on their case. Oh, you mean rebuttal evidence. No, we didn't. It was argued that there was nothing to rebut. The court asked this question about the rebutted presumption. First of all, let me say counsel indicated, as I heard the argument, that there was no mention in the opinion about any presumption. And in page 16 of the opinion, there is a discussion of the presumption where the court says, in addition to the presumption arising from the admitted gift, breach of trust can also arise when the person receiving the benefit provides the only guidance, the only guidance, to an elderly person and so on. And also on page 12, there's a word presumption isn't actually used, but in the absence of a formal legal relationship, the law recognizes that intimacy and trust can also create the obligations of the fiduciary. And the analogy to arm's length transaction isn't what we're dealing with here. The problem that the defendant has is that the relationship that he had created this fiduciary obligation. And that creates a presumption of undue influence whenever he receives anything from his mother. Now, this is very akin to a will contest. Same presumptions are at work. Please look at 200.03 if you have any questions about that or if you disagree with it. It's fundamental law and the comment to the will contest talks about, I'm sorry, the comment to the instruction talks about these situations. The presumption arises. We're done. It's their obligation to rebut that presumption. It hasn't been. And so any benefit he received from her is presumptively fraudulent. The court asks about the standard of review here. We cover, I think, several standards of review on pages four and six of our brief. With respect to the dead man's act, it seems to me that it's an abuse of discretion. Now, the problem with respect to the case in its entirety is, of course, manifest way to the evidence. And if you find that any significant part of the objectionable evidence that was let in in violation of the dead man's act is not in the case, then there is no evidence. And so the case needs to be reversed because in analyzing the manifest way to the evidence, there would be no evidence. But the dead man's act problems have no significance until you cross the path of the fiduciary relationship. And it's there. It's classic. It's just like it's presented in the jury instruction. I would point out that there is a special concurrence, as you will recall, to this opinion, which is part of the opinion and discusses many of the factors of law. So are there any questions? Thank you very much. Thank you. We'll be taking this matter under advisement and hopefully rendering a decision without undue delay. We will be recessing for a few minutes for a panel change.